UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIAH S. TURNER,

        Plaintiff,

CASE NO. 16-cv-12926
HON. GEORGE CARAM STEEH

v.

HARTFORD NURSING AND REHAB,

        Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT (Doc. 11)**

    Plaintiff Mariah Turner, a certified nursing assistant ("CNA"), who worked for defendant Hartford Nursing and Rehab ("Hartford") for a mere four months, brings this pregnancy disability action under Title VII and the Pregnancy Discrimination Act (PDA) arising out of her termination after she was transferred to light duty work.  Now before the court is Hartford's motion for summary judgment on the grounds that Turner was discharged for her three unexcused absences in the ten day period of her reassignment to a light duty position.  Oral argument had originally been scheduled in this matter, but upon closer evaluation of the parties' submissions, the court determines that a hearing is not necessary pursuant to Local Rule 7.1(f)(2).  Because plaintiff has failed to demonstrate a

genuine issue of material fact, defendant's motion for summary judgment shall be granted.

## I. Factual Background

On February 18, 2015, Hartford was terminated from her employment for Northwest Manor, a non-party, due to two instances where she was a no show/no call. (Doc 11-15 at PgID 114-15). On February 24, 2015, Hartford hired Turner (formerly "Shannon") as a CNA. (Doc. 11-3 at PgID 85). The CNA position required lifting of more than ten pounds. (Doc. 11-2 at PgID 74). Approximately three months later, Turner learned that she was pregnant. (Doc. 11-2 at PgID 73). She had not been employed long enough to qualify for leave under the collective bargaining agreement ("CBA") or the Family and Medical Leave Act ("FMLA"). Because she had suffered a previous miscarriage, her pregnancy was deemed high risk and Turner obtained a doctor's note on June 4, 2015 stating that it was medically advisable that she lift no more than ten pounds and be placed on light duty assignment for the duration of her pregnancy. (Doc. 14-3 at PgID 149).

On the same day, Turner presented the note to the scheduler, Scarlet Williamson, who, according to Turner's deposition, told her that Hartford does not ordinarily grant light duty to pregnant women but only offers such

accommodations to those injured on the job, but promised to forward the note to Amelia South, then Director of Hartford's Human Resources' Department. (Doc. 11-2 PgID 74). According to Turner's deposition testimony, South then telephoned her and informed her that they did not ordinarily grant reassignment to light duty, but offered to call "corporate" and get back to her. *Id.* On June 9, 2015, Hartford offered Turner a light duty assignment in Admissions for a ten day period, subject to reevaluation at the end of that period. (Doc. 11-9 at PgID100, 11-2 at PgID 74).

In support of its motion for summary judgment, Hartford has submitted a formal written copy of its "Pregnancy Light Duty Policy." (Doc. 11-5 at PgID 91). The policy states:

> It is the policy of the facility to provide pregnant employees an opportunity to continue to participate in the workforce during pregnancy. Every effort will be made to accommodate the pregnant employee's restrictions in their regular position. This policy is to establish guidelines relating to Temporary Light Duty for employees with medical restrictions due to pregnancy when they cannot be accommodated in their regular position.

*Id.* The Policy is undated and it is unclear if the Policy was ever provided to Turner.

Turner worked eight-hour days in her new assignment from June 9 to June 16, 2015. (Doc. 11-10 at PgID 102). But Turner then missed work on three of the ten days she was assigned to light duty work. Turner claims all

- 3 -

of her absences were medically excused and that she communicated each absence to her employer. Hartford, on the other hand, argues none of the absences were medically excused, and for two of the three absences, Turner was a no call/no show.

Turner's first absence occurred on June 17, 2015, when Turner left work after completing two hours of her eight-hour shift complaining of swelling of her feet. (Doc. 11-2 at PgID 75). She visited the Emergency Room at Providence Hospital at 10:40 a.m. and was discharged at 12:37 p.m. (Doc. 11-11 PgID 105). The discharge papers note that Turner was about six-weeks pregnant and has no visible edema. *Id.* at 106. Turner did not return to work, and testified at her deposition that despite the doctor's note to the contrary, her feet were swollen and hurt her. (Doc.11-2 PgID 75).

Turner's next absence occurred the next day when she had a doctor appointment. Turner testified at her deposition that she told South about her appointment. (Doc. 11-2 at PgID 76). Her doctor's office provided a note indicating that she was seen at the office on June 18, 2015 and cleared her to return to work that same day. (Doc. 11-12 at PgID 108). Turner did not return to work that day. She did, however, work her regularly scheduled light duty shifts on June 19 and 22, 2015. (Doc. 11-10

at PgID 102-03).  On  June 23, 2015, Turner did not report to work because she was vomiting.  (Doc. 11-2 at PgID 76).  Turner testified at her deposition that she spoke to the receptionist/secretary to report her absence, *id.*, but Hartford denies that it received such a call.  Turner did not see her doctor that day, but she testified that she telephoned the doctor's office and was told that vomiting during pregnancy is normal.  *Id.*

On June 24, 2015, Hartford sent Turner a termination letter stating as follows:

> Your temporary light duty assignment with Hartford Nursing and Rehab Center has ended.  Unfortunately, there are no other light duties [sic] assignments available that fall within your current restrictions.
>
> Pursuant to CBA, page 16, Section 7, a:["]**The employer shall grant a leave of absence without pay to an eligible employee with at least one (1) year of service who is disabled as a result of sickness or injury for the period of continuing disability."**
>
> **And pursuant to FMLA Act, in order to qualify for FMLA, you must have worked at least 1250 hours preceding and have been employed one year.**
>
> Unfortunately, Ms. Shannon, your medical condition does not qualify for either situation.  Therefore your employment with Hartford Nursing and Rehab Center has been terminated. Please feel free to reapply for a position once you are able to work.

(Doc. 14-2, PgID 147) (emphasis in original).

In its motion for summary judgment, Hartford claims it terminated Turner because of her three allegedly unexcused absences for which two were allegedly not reported. Turner, on the other hand, claims all of her absences were excused, and that the real reason for her termination was discrimination on the basis of her pregnancy. In her Complaint, Turner alleges that "[o]ther workers are and have been permitted accommodations when temporarily disabled, and were not fired due to their need for light duty." (Complaint, ¶ 9). The Complaint further avers, "Defendant's actions in refusing to permit Ms. Turner the same changes in duties as it does non-pregnant workers with conditions that limit their ability to lift or perform other functions of their jobs violate the Pregnancy Discrimination Act, an amendment of Title VII of the Civil Rights Act of 1964." *Id.* at ¶ 18.

After her termination, Turner obtained new employment as a CNA at Medilodge, a long term care facility, and at Burlington Coat Factory. (Doc. 11-2 at PgID 79, 82). On October 19 or 20, 2015, Turner was placed on bed rest for the duration of her pregnancy. (Doc. 11-2 at PgID 81). Thus, Hartford argues that should Turner's pregnancy discrimination claim survive summary judgment, any award for backpay must be capped as of October 20, 2015 at which time Turner was admittedly unable to work. Turner has not responded to that argument.

## II. Standard of Law

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

### III. Analysis

### A.    PDA and Title VII Standard of Law

The PDA expanded the protections of Title VII to cover those "'women affected by pregnancy, childbirth or related medical conditions' by expressly requiring that employers provide the same treatment of such individuals as provided for 'other persons not so affected but similar in their ability or inability to work.'" *Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1226 (6th Cir. 1996) (quoting 42 U.S.C. § 2000e(k)). But the PDA does not require special or preferential treatment for pregnant employees, it only requires "that pregnant employees be treated *the same* as non-pregnant employees who are similarly situated with respect to their ability to work." *Id.* (emphasis in original). The Sixth Circuit has explicitly recognized that "the PDA does not categorically prohibit the termination of pregnant employees who are unable to work." *Cleveland v. Fed. Express Corp.*, 83 F. App'x 74, 81 (6th Cir. 2003). For example, in *Spees v. James Marine, Inc.*, 617 F.3d 380, 395 (6th Cir. 2010), the Sixth Circuit affirmed summary judgment on plaintiff's pregnancy discrimination claim for wrongful termination, where her employer demonstrated that it terminated her, not because she was pregnant, but because she submitted a notice from her doctor that she required bedrest for the duration of her pregnancy. The

PDA simply requires that a pregnant employee "shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

Discrimination claims under the PDA and Title VII can be proved by direct or indirect evidence. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566-67 (6th Cir. 2001). In this case, Turner proceeds solely under the indirect or circumstantial method; thus, the familiar *McDonnell Douglas* burden shifting analysis applies. Under that paradigm, in order to establish her prima facie case, the parties agree that plaintiff must show that "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 573 (6th Cir. 2006). If the plaintiff successfully proves her prima facie case of pregnancy discrimination, the burden of production shifts to the employer to establish a legitimate, nondiscriminatory reason for the employment action. *Id.* at 576. If the defendant satisfies its burden, the presumption of intentional discrimination arising from the prima facie case is negated, and in order to defeat a motion for summary judgment, plaintiff must rebut the articulated reason by showing that it is not credible and is a mere pretext for discrimination. *Id.*

The plaintiff can meet this burden by showing that the employer's reason has no basis in fact, did not actually motivate the employer, or was insufficient to motivate the adverse action. *Id.*

In this case, Turner seeks to prove the fourth prong of her prima facie case under the theory of disparate treatment. She alleges that Hartford refused to permit her to have the same change in duties as non-pregnant workers with conditions that limit their ability to lift. (Complaint, ¶¶ 9, 18). The Supreme Court recently addressed a similar disparate treatment claim in *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338 (2015). In that case, as here, plaintiff sought to proceed under the indirect or circumstantial method under the *McDonnell Douglas* framework. In *Young*, the Court explained that plaintiff may prove a prima facie case of discrimination under the PDA by showing that "(1) she belonged to the protected class, (2) she sought accommodation, (3) her employer did not accommodate her, and (4) the employer did accommodate others 'similar in their ability or inability to work.'" *Id.* at 1354. Applying the burden-shifting method, the Court found that plaintiff had raised a genuine issue of material fact in support of her prima facie case by introducing evidence that UPS had a policy of allowing employees to be reassigned to light duty when they were injured on-the-job, had disabilities under the Americans

with Disabilities Act, or lost their DOT certification, yet failed to provide the same benefit to pregnant employees with similar lifting restrictions. *Id.* at 1355-56.

**B.    Prima Facie Case**

In this case, Hartford concedes that the first three elements of Turner's prima facie case have been established, but contends that Turner has failed to create a genuine issue of material fact as to the fourth element: that there is a nexus between plaintiff's pregnancy and her termination. Plaintiff may prove a nexus between an adverse employment action and her pregnancy through evidence that other non-pregnant employees similarly situated in their ability or inability to work received more favorable treatment. *Young,*135 S. Ct. at 1350, 54, *Ensley-Gaines*, 100 F.3d at 1226. This is the theory upon which Turner bases her discrimination claim in this case. (Complaint, ¶¶ 9, 18). Courts have recognized that the nexus element may be established by proof of disparate treatment. For example, in *Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 483-84 (6th Cir. 2013), the Sixth Circuit found that plaintiff had established the fourth element of her prima facie case by introducing evidence that her employer allowed employees with lifting restrictions because they were injured on the job to be assigned to light

duty work, but refused to afford her the same benefit. By contrast, in this case, Turner has presented no evidence that Hartford allowed non-pregnant CNAs with lifting restrictions to be reassigned to light duty work. Also, she has failed to introduce any evidence that non-pregnant CNAs who could not perform the essential functions of their positions because of their lifting restrictions were allowed to maintain their employment as CNAs.

In her response brief, Turner argues she has demonstrated sufficient facts in support of the fourth prong of her prima facie case to defeat Hartford's motion for summary judgment for four reasons: (1) the scheduler and head of Human Resources told her that Hartford does not accommodate pregnant CNAs by allowing them to be reassigned to light duty work, (2) there was no written policy allowing for light duty work at the time of her termination, (3) the wording of her termination letter, and (4) she was pregnant at the time of her termination. (Doc. 14 at PgID 141). The court addresses each argument in turn below.

First, the court considers Turner's argument that Williamson and South both told her they did not think that Hartford provided for light duty work for pregnant employees with medical restrictions. Williamson was the scheduler, not a decision maker, so the court affords little weight to her statement. In discrimination cases, in order to evaluate the relevance of a

remark made by an individual who works for the employer, the court considers both the substance of a remark as well as the influence the individual had in the employee's termination. *Asmo v. Keane, Inc.*, 471 F.3d 588, 595 (6th Cir. 2006) (citing *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 355 (6th Cir.1998)). Here, Williamson played no role in Turner's termination, and thus, her remark standing alone generally is insufficient to give rise to an inference that Hartford discriminated against her. *Id.* at 354. Even considering her statement, it does not support an inference of discrimination. It is true that according to Turner's deposition testimony, Williamson did tell her that she thought employees were only afforded light duty work when injured on the job, (Doc. 11-2 at PgID 74), but Turner has failed to identify *any* such workers. In the absence of any such evidence, the court affords little circumstantial weight to Williams' statement.

The court turns now to South's statement that Hartford did not normally allow for reassignment to light duty for pregnant employees, but she would investigate the matter further and get back to Turner. *Id.* As the Director of Human Resources, the court gives greater weight to South's alleged statement than it affords to the scheduler's statement. It is undisputed that Hartford granted Turner reassignment to light duty work.

Thus, even if it was not Hartford's general policy to do so, Turner was specifically granted permission to be reassigned to light duty work. Under these circumstances, South's statement that she was unsure of Hartford's policy regarding reassignment of pregnant employees to light duty work does not support an inference of discrimination in this case.

Second, the court considers Turner's claim that the non-existence of any written policy regarding reassignment of pregnant employees to light duty work is evidence of discriminatory intent. Unless Hartford had a policy allowing for reassignment of non-pregnant workers with medical restrictions to light duty work, Hartford is not required to offer the same to pregnant employees. *Ensley-Gaines*, 100 F.3d at 1226. Plaintiff makes much of the fact that Hartford produced an undated document to the EEOC which is a formal written policy providing for accommodating pregnant employees with light duty work where it is medically necessary. The fact that Hartford may have adopted a formal policy of allowing pregnant employees to take light duty assignments at a later point does not give rise to any inference of discrimination at the time of Turner's termination. As one court has noted:

> Interestingly, although the PDA neither allows employers to deny pregnant employees benefits given to other employees nor requires them to give special treatment, an employer may *choose* to give preferential treatment to pregnant employees, without giving the same preferential treatment to other

> employees. As the Supreme Court has indicated, "Congress intended the PDA to be a floor beneath which pregnancy disability benefits may not drop—not a ceiling above which they may not rise."

*Mullet v. Wayne-Dalton Corp.*, 338 F. Supp. 2d 806, 811 n.7 (N.D. Ohio 2004) (quoting *California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 285 (1987)).

In the absence of any evidence that non-pregnant employees with medically necessary lifting restrictions were allowed reassignment to light duty work, Hartford was not required to provide the same to pregnant employees. The fact that Hartford adopted such a policy for pregnant employees at some point, albeit likely after Turner was terminated, is not evidence that the lack of such a preferential policy at the time Turner was let go was in any way discriminatory. The question is simply whether Turner was treated the same as non-pregnant employees with the same lifting restrictions. Turner has presented no evidence that non-pregnant employees were treated more favorably than her.

Third, the court considers the wording of her termination letter. Turner claims the letter evidences discriminatory intent as it does not mention her unexcused absences as the reason for her termination, only that there is an absence of light duty assignments available. (Doc. 14-2 at

PgID 147). The letter further advised Turner that due to her mere four months of employment, she was ineligible for leave under the CBA or the FMLA. *Id.* Even taking the reasons given in the termination letter on their face, the letter is not evidence of discriminatory intent. Hartford was under no obligation to reassign Turner to a light duty position, and so, even if this were the real reason for her termination and not her allegedly unexcused absences, that explanation is non-discriminatory and fails to support the causal nexus element of Turner's prima facie case.

Finally, the court considers Turner's argument that the fact that she was pregnant when she was terminated is evidence of the nexus required to perfect her prima facie case. The mere fact that she was pregnant when she was fired is insufficient to prove that her termination was discriminatory. In the absence of any other evidence to link her termination to pregnancy discrimination, Turner has failed to introduce sufficient evidence to raise a genuine issue of material fact in support of her prima facie case.

## C.   **Legitimate Nondiscriminatory Reason**

Even if Turner could establish her prima facie case, Hartford has set forth a legitimate, nondiscriminatory reason for the employment action. Hartford claims that it discharged Turner for her three unexcused absences

during her ten-day reassignment to light duty work in the Admissions Department, at least one of which it alleges was a no call/no show situation. Because Turner testified at her deposition that she notified her employer for all of her absences, and viewing the facts in the light most favorable to the nonmoving party, the court does not credit Hartford's claim that Turner was a no call/no show. In any event, Turner has come forward with no evidence that her absences were medically necessary. Her first absence on June 17, 2015 arose out of her alleged foot swelling, but the doctor who examined her at the hospital noted in his discharge report that there was no edema present. (Doc. 11-11 at PgID106).

Her second absence on June 18, 2015 for a doctor appointment was also unexcused. The doctor's note cleared her to return to work that day, yet she did not report. (Doc. 11-12 PgID 108). On June 23, 2015, Turner missed her light duty assignment for the third time when she admittedly did not report to work because she was vomiting. She failed to submit a doctor note excusing her absence.

Having demonstrated that Turner had three unexcused absences during her ten-day light duty assignment, Hartford has established a legitimate nondiscriminatory reason for her termination.

**D.     Pretext**

Having set forth a legitimate nondiscriminatory reason for her termination, the burden shifts back to Turner to come forward with evidence to prove that the reason given for her termination was not the real reason but was pretext for discrimination.  To carry her burden to demonstrate pretext, plaintiff can demonstrate that the proffered reason:

> (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. .... If a plaintiff can show that the defendant's proffered, nondiscriminatory reason is pretextual, the trier of fact may infer discrimination. .... Nevertheless, the ultimate burden of proof to show discrimination remains on the plaintiff at all times.

*Tysinger,* 463 F.3d at 576 (citing *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000)).  Turner has failed to meet her burden here.

Turner argues that Hartford's reason is merely pretextual because the termination letter did not reference her unexcused absences and in fact invited her to reapply to Hartford in the future.  However, even if Hartford fired her because of the absence of light duty work, and not because of her dismal attendance record, such a reason also would not be discriminatory unless Turner could prove that non-pregnant employees with the same ability or inability to work were treated more favorably than her.  Having

failed to do so, Turner has failed to raise a genuine issue of material fact that Hartford's reason for firing her was pretext for discrimination.

## IV. Conclusion

For the reasons set forth above, Hartford's motion for summary judgment (Doc. 11) is GRANTED.

**IT IS SO ORDERED.**

Dated: July 25, 2017

                        s/George Caram Steeh
                        GEORGE CARAM STEEH
                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 25, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk